**UNITED STATES of America,**
**Appellee,**

**v.**

**Joseph B. ALTRUDA, Appellant.**

**No. 321, Docket 23462.**

United States Court of Appeals
Second Circuit.

Argued June 8 and 9, 1955.

Decided Aug. 2, 1955.

Lorenz, Finn & Giardino, New York City, Joseph Lorenz, New York City, of counsel, for appellant.

J. Edward Lumbard, U. S. Atty. for Southern District of New York, New York City, Robert M. Pennoyer, Asst. U. S. Atty., New York City, of counsel, for appellee.

Before CHASE and MEDINA, Circuit Judges, and RYAN, District Judge.

RYAN, District Judge.

The defendant appeals from a judgment of conviction and sentence imposed following a jury verdict of guilty on Count 3 of a three-count indictment,[1] filed on November 25, 1953, which count charged a wilful and knowing attempt to evade payment of income tax due for the calendar year 1947, in violation of Section 145(b), Title 26 U.S.C.

The trial judge, at the close of the presentation of the evidence dismissed Count 1,[2] charging attempted evasion for 1945 and Count 2 charging attempted evasion for 1946 on the ground that the applicable six-year statute of limitations had run. Section 3748, 26 U.S.C.

The defendant was sentenced to five months imprisonment and fined $2,000; he was released on bail pending deter-

---

1. Count 1 of the indictment charged that on March 15, 1946 defendant attempted to evade income tax for the calendar year 1945, and alleged that the defendant made a false and fraudulent income tax return for that year wherein he stated that his net income was $3,808.39 and the tax due thereon $677.11 when he well knew that his net income for that year in fact was $11,317.86 on which there was due income tax of $2,408.22.

Count 2 of the indictment charged that on March 15, 1947 the defendant attempted to evade income tax for the calendar year 1946, and alleged that the defendant made a false and fraudulent tax return for that year wherein he stated that his net income for the year was $4,391 and the amount of tax due thereon $670.71, when he well knew that his net income for the year in fact was

$20,217.01 on which there was due income tax of $5,830.79.

Count 3 of the indictment charged that on March 15, 1948 the defendant attempted to evade income tax for the calendar year 1947, and that the defendant made a false and fraudulent tax return for that year wherein he stated that his net income for the year was $4,293.33 and the amount of tax due thereon $650.24, when he well knew that his net income for the year in fact was $14,118.70 on which there was due income tax of $3,036.75.

2. The trial judge at first denied a motion for a directed verdict of acquittal but under Rule 29 reserved the right to reconsider. He later granted the motion for a directed verdict. Since the Government has filed no appeal, the procedure adopted is of no import. We have before us only the conviction on Count 3.

mination on this appeal. Because we have concluded that the judgment of conviction must be reversed and a new trial ordered, we deem it necessary to discuss the trial record at length.

The prosecution was conducted on the net worth expenditure theory and was predicated entirely on statements, data, information and other evidence secured from "leads" voluntarily furnished by the defendant to Internal Revenue investigating and auditing agents.[3]

The principal source of defendant's income through 1948 was from the practice of his profession as a doctor; however, from 1943 on, he had additional income from the ownership and operation of three parcels of realty in New York City which he acquired in 1943, 1944 and 1945, and he had further income during the years 1943 through 1948 from the purchase, ownership and sale of stocks and bonds which he carried in accounts with two brokerage firms.

When first interviewed in June, 1947 by an examining agent in connection with an office audit of his 1945 return, the defendant stated that the cash funds he had used for the purchase of the realty and securities had come from an inheritance and from life savings accumulated over a period of twenty-three years. In July, 1947 he brought the agent a statement [4] which was intended to reveal the source and extent of these savings and the annual accretions. It covered three separate years—1928, 1932 and 1939—and showed average earnings, estimated cash receipts, bank deposits and living and operating expenditures and approximate savings per annum. He then also exhibited to the agent state-

ments of his brokerage accounts and of a bank account for 1945. In 1948, upon request for additional information he submitted his current bank statements. There were later assigned to this agent the office audits of the defendant's returns for the years 1943 through 1948. Following this, and in April, 1949, the agent requested further data; he next met with the defendant at the office of an accountant engaged by the defendant and such records as were claimed to be available were shown to him. The defendant had not kept books of account and his records of treatments of patients, he explained, either had been long since destroyed by a small fire in the basement of his home or rendered illegible by water damage resulting from a flood in the basement. The defendant's accountant prepared and sent to the agent by mail on July 9, 1949 a number of statements. Among these were a statement of the defendant's assets and liabilities reflecting his net worth as of January 1, 1941;[5] a similar statement of net worth as of December 31, 1948;[6] a schedule of defendant's living and office expenses for the period January 1, 1925 to January 1, 1941;[7] a like schedule for the period January 1, 1941 to December 31, 1948;[8] and an historical statement by the defendant dated May, 1949.[9]

To establish a prima facie case under the net worth theory the Government was required to prove the worth of the defendant on January 1, 1947. This the Supreme Court has called "an essential condition." [10]

It was the signed statement of the defendant listing his assets and liabili-

---

3. The defendant objected to the admission in evidence of many of these statements, contending that they were given under a promise that there would be no criminal prosecution. The trial was interrupted and a separate hearing held on these objections out of the presence of the jury. The objections were overruled. On this appeal, this ruling has not been questioned by the defendant. We accept these statements as having been voluntarily made.

4. Exhibit 58.

5. Exhibit 59.

6. Exhibit 60.

7. Exhibit 61.

8. Exhibit 62.

9. Exhibit 63.

10. Holland v. United States, 348 U.S. 121, 132, 75 S.Ct. 127 (Oct. 1954).

ties as of January 1, 1941 which was used by the Government to prove an opening net worth as of that date made up of $59,875 cash on hand, $12.10 bank balance and $7,785, the surrender value of a life insurance policy, totaling in all $67,672.10. The Government, then, with data furnished by the defendant and information it had gathered sought to prove the defendant's net worth at the year end 1941 and each year end through the indictment year—1947—and the succeeding year—1948. The Government sought to reconcile the closing figures of these calculations with the statement furnished by the defendant of his net worth as of December 31, 1948, and this reconciliation the Government contended was corroborative of the accuracy of its computations for the years 1941 through 1948.[11]

The defendant's net worth statement as of December 31, 1948 listed cash on hand—$100; bank balance—$8.90; stocks and bonds (at cost)—$52,049.28 (the market value was given as $28,399.-88); realty (at cost)—$499,630 (although depreciation had been charged off in the amount of $37,186.69); total assets of $551,788.18 and liabilities of mortgages on realty $399,143.69 and debits on brokerage accounts of $9,081.-29; total liabilities $408,224.98, reflecting a net worth of $143,563.20. Bearing in mind that the defendant admitted a net worth of $67,672.10 as of January 1, 1941, he did not dispute that from that date to December 31, 1948—a period of eight years—his net worth increased $75,891.10. The Government in its calculations increased the assets of the defendant by crediting him with capital improvements to his realty holdings of

$561.61 in 1947 and $5,504.05 in 1948, totaling $6,065.66, thus increasing his net worth as of December 31, 1948 from $143,563.20 to $149,628.86. It was not disputed by the defendant that these capital improvements in the amount stated were made. The burden was on the Government to establish what portion of this increase in net worth accrued during the prosecution year—1947.

The evidence, accepting the Government's calculations, shows the defendant to have been convicted of an attempt to evade payment of income tax due for the year 1947 on income totaling $3,189.87—consisting of fraudulently unreported income from his practice of $2,063.87 and from his dividends of $1,126. At the same time the Government's calculations show that when computed from the standpoint of fraud, the defendant overstated his income for 1948 to the extent of $3,393.04, being an overstatement of income from his practice of $4,490.62 and an omission of income from dividends of $247.69 and from capital gains on sale of stock of $303.89.

The computations of the Government were based on acceptance of the defendant's statement that on January 1, 1941 he did in fact possess no larger a cash fund than $59,875. Although it was contended by the Government on trial that the defendant then possessed no such fund, the validity of the Government's net worth calculations must be tested with reliance on the defendant's net worth statement of January 1, 1941.

 The several "accounting schedules" introduced in evidence by the Government presented "a mass of figures."[12] It would take a jury of mathematicians

---

11. The Assistant United States Attorney stated: "The 1948 net worth statement is the document which the Government will use to corroborate its build up of the taxpayer's net worth from 1941 forward. All we want to do is work backward from the end of 1948 to the end of 1947 to prove that the figure we arrive at, at the end of 1947, is correct. That is all." · (S.M. 205.)

12. Thus, concerning Ex. 73 which is described as a reconciliation of net worth increases, the following colloquy took place on trial:

"The Court: Well, let us be sensible. Is it a mass of figures?

"Mr. Hill (Ass't U. S. Attorney): Yes, Your Honor, it is a mass of figures."

Examination of the exhibit shows this description to be entirely fitting. Ex-,

to ascertain the facts out of the confusion created by these schedules; and the only justification for their admission in evidence is that they were intended to assist the jury in understanding and considering the evidence. They hardly served this purpose. Of these Government prepared schedules, particularly Exs. 67, 68, 69 and 73, the observation of the Supreme Court in the Holland case is especially apposite—"bare figures have a way of acquiring an existence of their own, independent of the evidence which gave rise to them." 348 U.S. at page 128, 75 S.Ct. at page 131.

The Government sought to demonstrate by these schedules that the evidence established that, assuming the defendant had on January 1, 1941 a cash fund of $59,875 and other assets totaling $67,672.10, he nevertheless had insufficient assets to make the expenditures he made in 1945, 1946, 1947 and 1948, and that the deficiencies in those years must have come from unreported income. In sum, it was the contention of the Government that the evidence established and the schedules showed that the annual increases in net worth were unaccounted for from assets of the defendant on hand at the beginning of each year and from reported income, and that the difference came from unreported current income.

The Government proceeded first by accepting the defendant's net worth statement as of January 1, 1941 and then stating the defendant's net worth as of the end of each calendar year through 1948. The defendant's assets and liabilities as disclosed in these annual opening and closing statements came from the records of the defendant's real estate agents, his stock brokers and his bank; the source records of these amounts were reliable and stated the property he then owned and his indebtedness. There were, however, no records to establish the amount of cash on hand listed among the assets, save only as appeared in the defendant's statements of his net worth as of January 1, 1941 and December 31, 1948. The Government, following recognized practice, calculated the difference between the net assets of the defendant at the beginning and end of each calendar year from 1941 through 1948. In this manner, it showed the gradual annual increase in net worth for each year and accounted for the total increase admitted by the defendant to be $81,956.76 (with the adjustment for capital improvements).[13] These annual net worth increases accrued almost entirely during 1943 through 1948 and were found in the increase in the equity in defendant's realty holdings resulting from amortization and payment of mortgage liens and in defendant's brokerage accounts because of cash payments made by him into those accounts.

To these annual net worth increases, the Government then, again following accepted procedure, added the defendant's non-deductible expenditures (being ad-

actly why such a reconciliation was at all necessary is difficult to understand. If the schedule of net worth increases (Ex. 67) had been correctly prepared in the first instance, there would have been no need for the reconciliation (Ex. 73). It was the admitted error in Ex. 67 which was "reconciled."

13. The following figures from Ex. 67, show the alleged annual increases in net worth, as the Government contended:

| | Net Worth | Increase |
|---|---|---|
| Jan. 1, 1941 | $67,672.10 | $ |
| Dec. 31, 1941 | 67,722.67 | 50.57 |
| Dec. 31, 1942 | 67,813.76 | 91.09 |
| Dec. 31, 1943 | 68,061.94 | 248.18 |
| Dec. 31, 1944 | 74,606.93 | 6,544.99 |
| Dec. 31, 1945 | 88,962.63 | 14,355.70 |
| Dec. 31, 1946 | 118,581.34 | 29,618.71 |
| Dec. 31, 1947 | 136,901.76 | 18,320.42 |
| Dec. 31, 1948 | 149,628.86 | 12,727.10 |
| | Total Increase | $81,956.76 |

mitted personal living expenses) and in 1948, $7,500 for a loan repaid and $6,080 for a remittance to Italy.[14] Continuing, then, the Government credited the defendant with accounting for the amount of income reported in his returns, the amount claimed in his returns for depreciation on realty, and the non-taxable portion of capital gains.[15]

It was the difference between this resultant figure of income accounted for by the defendant and the sum of his net worth increases and other non-deductible expenditures, which the Government sought to illustrate by the schedule Ex. 67 as the amount which the defendant failed to report and this was stated as follows:

| Net Worth Increase and non-deductible expenditures | Less Total Income Accounted for by defendant | Difference being income unreported |
|---|---|---|
| 1941—$ 3,457.57 | $ 1,897.33 | $ 1,560.24 |
| 1942— 2,203.09 | 688.14 | 1,514.95 |
| 1943— 2,386.18 | 844.60 | 879.08 |
| 1944— 9,198.99 | 3,403.51 | 520.48 |
| 1945— 17,116.70 | 3,808.39 | 7,508.97 |
| 1946— 32,368.71 | 14,415.13 | 17,953.58 |
| 1947— 21,570.42 | 12,592.33 | 8,978.09 |
| 1948— 30,048.00 | 22,842.99 | 7,205.11 |

We accept these calculations as far as they go; they are sufficiently supported by data and admissions of the defendant; they do not, however, present the complete picture.

The evidence showed that prior to trial the defendant's accountant had satisfied the examining agents that in the years 1946, 1947 and 1948 the defendant had made errors in under-reporting his income from his realty holdings—to the extent of $5,222.68 in 1946, $5,788.22 in 1947 and $11,144.15 in 1948. These amounts the Government conceded on trial to have been erroneously not fraudulently unreported by the defend-

14. The total resources expended by the defendant stated year by year were thus stated in Ex. 67:

| | Net Worth Increase | Living Expenses | Other non-deductible expenditures | Total expenditures |
|---|---|---|---|---|
| 1941 | $ 50.57 | $ 3,407.00 | | $ 3,457.57 |
| 1942 | 91.09 | 2,112.00 | | 2,203.09 |
| 1943 | 248.18 | 2,138.00 | | 2,386.18 |
| 1944 | 6,544.99 | 2,654.00 | | 9,198.99 |
| 1945 | 14,355.70 | 2,761.00 | | 17,116.70 |
| 1946 | 29,618.71 | 2,750.00 | | 32,368.71 |
| 1947 | 18,320.42 | 3,250.00 | | 21,570.42 |
| 1948 | 12,727.10 | 3,721.00 | $ 13,580.00 | 30,048.00 |

15. The Government credited the defendant with accounting for the following income:

| | Net Income per tax return | Depreciation deduction | Non-taxable portion of capit. gains | Total Income accounted by Dft. |
|---|---|---|---|---|
| 1941 | $ 1,897.33 | $ ....... | $ ....... | $ 1,897.33 |
| 1942 | 688.14 | ....... | ....... | 688.14 |
| 1943 | 844.60 | 662.50 | ....... | 1,507.10 |
| 1944 | 3,403.51 | 5,275.00 | ....... | 8,678.51 |
| 1945 | 3,808.39 | 4,991.19 | 808.15 | 9,607.73 |
| 1946 | 4,391.00 | 9,660.00 | 346.13 | 14,415.13 |
| 1947 | 4,293.33 | 8,299.00 | ....... | 12,592.33 |
| 1948 | 7,043.99 | 8,299.00 | ....... | 22,842.99* |

* After adjustment for $7,500 loan.

ant. By crediting these amounts, the income fraudulently not reported as claimed by the Government and demonstrated by its schedule Ex. 67, was reduced in 1946 from $17,953.58 to $12,730.90, in 1947 from $8,978.09 to $3,189.87 and in 1948 from $7,205.11 to an over declaration of income (when viewed from the standpoint of fraud) of $3,909.04. It was the failure of the Government to include these adjustments for these years which made Ex. 69 necessary. Exhibit 67 did not present the figures as they were known to the prosecution; it was erroneous in that it did not take into account these realty income adjustments. Exhibit 67 was confusing unless read with and interpreted by the computations shown in Ex. 69.

It is urged by the defendant on this appeal that the Government's failure to make adjustments with respect to defendant's realty income for these three years fundamentally and adversely to him affected the validity of its calculations, resulting (a) in an entirely fictitious and inadequate opening item of cash of $100 as of December 31, 1946 and (b) in an erroneous overstatement of at least $5,222.68 in the Government's claimed "Increase in New Worth for 1947," and (c) in the erroneous creation of the item of alleged fraud in 1947 in the amount of $3,189.87.

To determine the merits of the first contention the evidence presented concerning cash payments by the defendant during the years 1941 through 1946 must be separately considered. Records of the defendant's realty purchases showed that he had expended $9,095 in acquiring title to an apartment building in 1943, $3,750 in 1944 and $25,000 in 1945 for a like purpose, making his total cash expenditures for realty in these years $37,845. Records of the defendant's brokerage accounts showed that he made cash deposits in these accounts of $2,882. In 1944, $8,172.26 in 1945 and $24,202.11 in 1946 —a total of $35,256.37. The grand total of cash disbursements for realty and securities was $73,101.37 for these years. There was no proof of cash expenditures in 1941 and 1942; the evidence showed that the cash fund of the defendant, which he admitted having on January 1, 1941, had been entirely disbursed prior to the prosecution year, 1947. In fact, the Government proved that after full allowance for the cash on hand on January 1, 1941, the defendant had expended an amount of income considerably greater than that which he had accounted for in his returns or otherwise prior to 1947.

Some observations should be made as to the extent that the realty income adjustments for 1946, 1947 and 1948 (or for any other year) would affect the net worth calculations.

The income for any year did not directly enter into the calculations of defendant's assets and liabilities for either the begining or the end of the calendar year periods. The assets were the sum total of cash on hand, the bank balances, the cost of realty and the cost of securities; the liabilities were the mortgages on realty, and the indebtedness to realty agents and stockbrokers—the difference was the defendant's net worth. There was no direct evidence that the defendant possessed any greater amount of cash on December 31, 1946 or on December 31, 1947 than he stated he did on December 31, 1948, that is $100. Assuming, however, that he did have the $5,222.68 realty adjusted income of 1946 on hand and unexpended as cash on December 31, 1946, it would effect an increase in net worth for the year 1946 from $118,581.34 to $123,804.02 since the defendant's assets as of December 31, 1946 would be increased from $541,499.75 to $546,722.43 occasioned by the increase of cash on hand from $100 to $5,322.68. Assuming, also, that he had the $5,788.22 realty adjusted income of 1947 on hand and unexpended as cash on December 31, 1947 it would effect an increase in net worth during 1947 (taking into account the assumed increase in cash of 1946) from $136,901.76 to $147,912.66. This would operate to reveal an increase in net worth for the calendar year 1947 of $24,108.64 instead of $18,320.42, as claimed by the

prosecution, and would not benefit the defendant. An even larger increase in net worth in 1948 would result, if we assume that the additional realty income of $11,144.15 in 1948 was retained as cash and unexpended as in 1946 and 1947. Such assumptions would simply demonstrate that the defendant had misstated the amount of cash on hand on December 31, 1948, and that he in fact had at that time a cash hoard not revealed of $22,255.05 instead of the $100. From these assumptions it would also follow that the defendant's income for 1946, 1947 and 1948 was larger than that contended for by the prosecution. In absence of proof to the contrary we have assumed that the amounts of additional realty income were expended; this we have done by accepting the defendant's own statement of net worth as of December 31, 1948 wherein he stated his amount of cash on hand to be $100, this being the interpretation most favorable to him. The very plausible explanation advanced by the Government on this appeal is that the defendant had understated his living expenses as $2,750 for 1946, $3,250 for 1947 and $3,741 for 1948. The items of adjusted realty income for 1946, 1947 and 1948 do not affect the basic integrity of the Government's net worth calculations, under this view, except to reduce the amount of fraudulently unreported income as we have above noted.

 Nevertheless, the omission of these items, of which the Government had notice prior to trial, from Ex. 67 entitled "Analysis of net worth increase and computation of unreported income" served to make that exhibit incomplete, inaccurate and misleading and the failure of the trial judge to sustain objection to its admission in evidence operated to the prejudice of the defendant. It was not an analysis of the net worth increase or a computation of fraudulently unreported income which conformed to the Government's evidence, and it did not fully state the facts. This is especially so because the omission of these items in effect forced a balance between the Government's calculations and the defend-

ant's statement of his net worth as of December 31, 1948. The Government contended that its calculations were corroborated by this statement, but there was no agreement with the amount stated to be cash on hand if these items of adjusted realty income remained unexpended and they were not revealed or accounted for by schedule Ex. 67.

It is also contended by the defendant that the Government knew or should have known that adjustments were necessary with respect to the realty income of 1943, 1944 and 1945 and that it failed to make these thus affecting the validity of its net worth calculations. The very short answer to this is that the evidence, including the realty agents' reports, did not reveal any facts which would necessitate or support an adjustment of defendant's realty income for these years.

 We recognize that in a net worth computation "the cogency of its proof depends upon its effective negation of reasonable explanations by the taxpayer inconsistent with guilt." Holland v. United States, 348 U.S. at page 135, 75 S.Ct. at page 135. This in turn places the burden on the Government to "track down relevant leads furnished by the taxpayer—leads reasonably susceptible of being checked, which, if true, would establish the taxpayer's innocence." 348 U.S. at pages 135–136, 75 S.Ct. at page 135.

 In the computation of the defendant's income for the years 1943, 1944 and 1945 no adjustment was made for unreported realty income. However, even were such adjustments found to have been necessary and were they made, they would not have affected the defendant's unreported income for 1947 and assuming the amounts involved not to have been expended, would have operated only to increase by an equal amount the cash the defendant had on hand at the beginning and end of 1947. The realty agents testified on the trial and the defendant neither inquired nor pointed out the necessity or occasion for adjustment

of reported realty income for these years —1943, 1944 and 1945. It was not incumbent on the Government to minutely examine each and every one of the statements of the firms managing the real estate to determine what expenses were charged to maintenance, when in fact they were capital expenditures, or whether the defendant accurately carried over from these statements to his returns the multitude of other expenditures made by his agents in operating his property during the years 1943, 1944 and 1945. The particulars as to those items lay with the defendant and his agents; the defendant voluntarily disclosed them as to 1946, 1947 and 1948 and this resulted in the adjustments discussed. It is but fair to assume that by his silence as to them they would disclose nothing to his benefit; in any event, the realty agents' statements in evidence do not disclose information which would enable one to determine whether the expenses incurred were deductible. Prima facie, it was sufficient for the Government to establish, as it did, the net amount the defendant received from his real estate agents after they had deducted the operating costs. We find no substance in the point made that the Government was obligated to negative any real estate income adjustments which were entirely speculative and which, in any event, would not have affected the 1947 income.

The charge of the Court gave the jury but little guidance as to the interpretation to be placed on the schedules which were introduced in evidence by the Government. It explained none of the calculations shown. The Court emphasized Ex. 67 without calling attention to Ex. 69 or mentioning that the items of adjusted realty income for 1946, 1947 and 1948 were omitted from Ex. 67 or that these items should be credited to the defendant in the computation of unreported income alleged by the Government to have been fraudulently unreported for these three years. The charge did not meet the requirements of a net worth prosecution.

The defendant contends that he was prejudiced by the refusal of the Court to charge that "whether or not the jury finds or believes that the defendant was guilty with respect to the years prior to 1947, if it finds or believes that with respect to 1947 he did not wilfully understate his income he should be acquitted." We do not agree; the charge was adequate on this matter.

However, the charge insofar as it concerned the weight which might be given to the defendant's 1948 return on the issue of wilfulness with respect to the 1947 return was misleading and erroneous. In the 1948 return, as we have pointed out, the defendant underreported his income but this, as conceded by the Government, was not pursuant to a purpose or intent to evade payment of income tax for 1948. In fact, as we have noted, from the standpoint of fraud this constituted an overstatement of income to the extent of $3,939.04. In its charge the Court first instructed the jury:

> "The jury may consider likewise on the issue of wilfulness the correctness or incorrectness of the returns filed by the defendant from 1941 to 1944, 1945, 1946, 1947 and 1948. In this connection, however, you will firmly bear in mind that the defendant is not charged with having violated the income tax law any year other than the year 1947."

At the conclusion of the charge the defendant's counsel took exception (out of the hearing of the jury) as follows:

> "Mr. Lorenz: Well, I except to the charge that anything with respect to 1948 may be considered in connection with intent in prior years."

After some extended colloquy the court stated to the jury:

> "The Court: I made the following statement, members of the jury, which I think bears correction: I said the jury may consider on the issue of wilfulness the correctness or incorrectness of the return filed by the defendant for 1941

to 1944, 1945, 1946 and 1948. Now you may strike that from your minds as a definite correction and not consider that, but I will substitute for that the following:

"The jury may also consider on the issue of wilfulness, if it finds it to be a fact, that the returns filed by the defendant from 1941 to 1944, were false and fraudulent * * *

"Mr. Hill: Excuse me, your Honor, I don't mean to interrupt your Honor, but I think it is 1946.

"The Court: What do you say?

"Mr. Hill: I say I don't mean to interrupt your Honor, but I think it is 1941 to 1946.

"The Court: Well, not the way this reads.

"Mr. Hill: No, your Honor. That was written before your Honor's ruling with respect to the other thing.

"The Court: To 1946. That is correct. Further, the jury may consider on this same issue, if it finds it to be a fact, if it finds it to be so, that the 1948 return was false and fraudulent.

"And that will complete my instructions to you."

In view of the exceptions taken by the defendant to the charge as originally given it was prejudicial to the defendant to ask the jury to consider on the issue of wilful evasion in 1947 whether the 1948 return was false and fraudulent when the Government had conceded on the trial that it was not.

We feel, too, that it was prejudicial to the defendant to have denied the request to charge "what the amount of fraudulently claimed income is in 1947." We feel that errors which might otherwise have been disregarded as not affecting the substantial rights of the defendant, here, because of the nature of the prosecution's proof and the exhibits may not be overlooked.

The judgment is

Reversed and new trial ordered.

