JAMES GODINE, JR. AND HIAWATHA GODINE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Godine v. Commissioner
Docket No. 4855-75
United States Tax Court
T.C. Memo 1977-393; 1977 Tax Ct. Memo LEXIS 50; 36 T.C.M. (CCH) 1595; T.C.M. (RIA) 770393; November 14, 1977, Filed E. J. Brenner, for the petitioners. William E. Saul, for the respondent. HALL MEMORANDUM FINDINGS OF FACT AND OPINION HALL, Judge: Respondent determined a $1,665.75 deficiency in petitioners' 1971 income tax. The questions presented *51 are: 1. Are petitioners entitled to recognize a loss on the disposition of their Baker Street property, or did they enter into a tax-free exchange of their Baker Street property for the Templeton Avenue property? 2. In the alternative, are petitioners entitled to a theft loss deduction in 1971? FINDINGS OF FACT Some of the facts have been stipulated by the parties and are found accordingly. At the time they filed their petition, petitioners resided in Daly City, California. In 1968 petitioners purchased a large, old residential building, containing six rental flats, at the corner of Baker and Turk Streets, San Francisco (hereinafter referred to as the "Baker Street property"). The property was in bad condition and had no tenants living in it. Petitioners proceeded to cut down overgrowth, put in a lawn, and clean and paint the apartments. At first, they and their friends did the work, but later they employed the assistance of a roofing contractor, a window installer and Robert Pierre ("Pierre"), a "contractor." Petitioners moved into the Baker Street property in November, 1970, by which time they had one tenant. Prior to moving in they lived in a rented apartment. *52 While living in that apartment they watched Pierre remodeling the unit next to their rental unit, and observed his work on a daily basis. In their opinion, the quality of Pierre's work was very good, and the owner of the apartment was pleased with it. Petitioners hired Pierre to make substantial alterations and improvements on the Baker Street property. Pierre represented to petitioners that he was a licensed contractor, and that he was doing a job for the Government at Hunter's Point. Pierre had a truck with his name and telephone number on the side. However, the State Contractor's License Board has no record of Pierre ever having been a licensed contractor in California. Pierre also represented that his work would satisfy all legal requirements and that he would bring the building "up to code," and that he would get the necessary permits. Petitioners paid approximately $11,000 to Pierre and to suppliers from whom Pierre ordered supplies up to the time of Pierre's disappearance. The proportion of the amount paid suppliers as compared to Pierre is unknown; the proportion of the $11,000 spent in 1970 was estimated by petitioners to be $6,000. Pierre commenced work in March *53 1970 and continued until May 1971. Petitioners learned for the first time that Pierre had not obtained the necessary building permits when a building inspector of the City and County of San Francisco stopped by to inquire about the new front steps. His visit was followed by a visit the next day by the same inspector, accompanied by a plumbing inspector, an electrical inspector and one or two others. This visit occurred before May 1971. The inspectors found numerous code violations: single-colored wiring, a plumbing pipe repaired with a beer can, improper flues and venting and other defects. To discover some of the defects the inspectors had to cut into the walls. The inspectors advised petitioners that the building would have to be brought "up to code" within thirty days, which period was later extended to ninety days when petitioners protested that they could not bring the building "up to code" in thirty days. At about the same time the inspectors were making their inspection, petitioners had other problems with the building. The drain in the shower in an upstairs apartment would not carry away the water. When the water pressure rose sufficiently to cause water to run freely, *54 the ceiling and carpets of the apartment below were ruined. Petitioners then attempted to contact Pierre. They called him and were told by his wife that she also was looking for him. Later when they called again the operator informed them that the number was not in service. Petitioners then drove to Pierre's residence, but found it vacant. They contacted the person who worked with Pierre, but he didn't know Pierre's whereabouts. The building inspectors tried to find Pierre, but couldn't. Petitioners abandoned their efforts to locate Pierre because of lack of money to hire an investigator. They never saw Pierre after May 1971. In September 1971 petitioners called the real estate broker through whom they had purchased the Baker Street property, Clyde Cournale ("Cournale"), and told him they didn't have the money to fix the property and wanted to sell it and get out their equity. Cournale estimated it would take $12,000 to $15,000 to bring the property "up to code." Petitioners intended to resume renting because they had expended their savings and were living off their combined earnings. Cournale offered to help petitioners "get out of" the Baker Street property by selling *55 it and getting them their equity. However, he did not take a written listing on the property. The parties orally negotiated that the amount of the petitioners' equity in the Baker Street property was $5,808.28. Later this amount was applied on a duplex on Templeton Avenue in Daly City ("Templeton Avenue property"). Cournale attempted to sell the Baker Street property and showed it to at least one party after petitioners had agreed to acquire the Templeton Avenue property. Approximately a week after petitioners contracted Cournale, Cournale called petitioners about buying a home he had for sale. First Cournale suggested a little house on Shield Street, which petitioners inspected and rejected. Later Cournale showed petitioners the duplex on Templeton Avenue, which petitioners reluctantly inspected. Petitioners agreed to purchase the Templeton Avenue property if they had enough money. In October 1971 petitioners agreed to transfer the Baker Street property to Cournale & Co., Inc. (Cournale's real estate business) and on or about the same time Cournale & Co., Inc., agreed to transfer to petitioners the Templeton Avenue property. The deed from petitioners to Cournale & Co. *56 , Inc. to the Baker Street property was recorded in the Recorder's office in San Francisco on December 22, 1971. The deed to the Templeton Avenue property from Cournale & Co., Inc. to petitioners was recorded in the Recorder's office in Redwood City on December 27, 1971. No escrow was employed. The transactions as reflected in the buyer's and seller's statements and instructions were handled by bookkeeping entries except for the additional cash paid by petitioners in the amount of $1,207.80 to balance the debits and credits on the transfer of the Baker Street property and an additional $499.10 to balance the debits and credits on the transfer of the Templeton Avenue property. Cournale would not have acquired the Baker Street property unless petitioners agreed to acquire the Templeton Avenue property from him. The only other circumstances under which Cournale would have acquired the Baker Street property would have been the petitioners' abandonment thereof. Cournale would not have purchased it for cash. Petitioners moved from Baker Street to Templeton Avenue on October 28, 1971. Petitioners and Cournale intended to exchange the Baker Street property for the Templeton Avenue *57 property. Petitioners realized a loss on the exchange. Neither party considered the tax effect of such an exchange. OPINION The first question is whether petitioners entered into a tax-free exchange when they exchanged the Baker Street property plus some cash for the Templeton Avenue property. The evidence shows that the parties intended to do what they did, namely, exchange one property for the other. What petitioners did not consider or intend was the tax-free consequences of such an exchange. Section 1031(a)[1] provides that "no gain or loss shall be recognized if property held * * * for investment * * * is exchanged solely for property of a like kind to be held * * * for investment." And subsection (c) of section 1031 provides that "if an exchange would be within the provisions of subsection (a) * * * if it were not for the fact that the property received in exchange consists not only of property permitted by such provision to be received without the recognition of gain or loss, but also of * * * money, then no loss from the exchange shall be recognized." *58 Section 1031 is not subject to election or waiver; it is applicable to any transaction within the scope of its provisions. United States v. Vardine, 305 F. 2d 60, 66 (2d Cir. 1962). Section 1031 represents an exception to the general rule requiring the recognition of all gains and losses, and should be strictly construed. Section 1.1002-1(b), Income Tax Regs.[2]
"Nonrecognition is accorded by the Code only if the exchange is one which satisfies both (1) the specific description in the Code of an excepted exchange, and (2) the underlying purpose for which such exchange is excepted from the general rule." Regs., section 1.1002-1(b). *59 Legislative history indicates that the reason for nonrecognition of gain or loss in the case of section 1031 exchanges was that Congress considered it inappropriate to recognize the "theoretical" gain or loss when the taxpayer's investment continues in like kind property, and the administrative burden of valuing the property received in exchange for thousands of horse trades and similar barter transactions each year would not be justified by the increased revenues to be derived therefrom. H.R. Rept. No. 704, Revenue Act of 1934, 73d Cong., 2d Sess., 1939-1 (Pt. 2) C.B. 554, 564. See Leslie Co. v. Commissioner,539 F. 2d 943 (3rd Cir. 1976), affg. 64 T.C. 247 (1975). The exchange of the Baker Street property for the Templeton Avenue property falls within the specific description in section 1031 of a tax-free exchange. An exchange is the reciprocal transfer of property as distinguished from a transfer of property for monetary consideration only. Leslie Co. v. Commissioner,supra, at 945-949; Regs., section 1.1002-1(d). The buyer's *60 and seller's statements and instructions clearly demonstrate a reciprocal exchange of property. The transaction also falls within the legislative purpose for excepting the exchange from recognition in that the petitioners' investment remains in like kind property. [3] We therefore conclude that the transaction in question is within the purview of section 1031, and no loss is recognized by petitioners on the exchange. Petitioners assert, however, that they did not intend an exchange, and that their motive should be dispositive of the tax effect of their transaction regardless of the fact that petitioners did in fact exchange the Baker Street property. We do not agree. Section 1031 cuts both ways in that neither gains nor losses are recognized in tax-free exchanges. A taxpayer realizing a loss on a transaction may argue it was a sale, whereas the taxpayer with gain may argue that in substance the transaction is an exchange. What actually *61 occurred must control, and not the mere motives or intent of the parties. See Alderson v. Commissioner,317 F. 2d 790, 794 (9th Cir. 1963), revg. 38 T.C. 215 (1962). We hold that in this case the petitioners' exchanged their Baker Street property for the Templeton Avenue property, and therefore are not entitled to recognize the loss realized on the exchange.
The alternative issue is whether petitioners are entitled to a theft loss deduction for all or any part of the $11,000 paid to Pierre and suppliers. Petitioners claim that they suffered an $11,000 loss by reason of the crime of false pretenses in 1971 (the year of discovery of the loss). Respondent contends that petitioners cannot establish that Pierre took money by false pretenses with criminal intent, and that they cannot establish the amount of the loss, if any. We agree with respondent. Section 165(c) provides that an individual is entitled to deduct a theft loss. "Theft" includes obtaining funds by false pretenses if that is a crime under the laws of the State where the loss occurred. California *62 has such a crime. California Penal Code, section 484 (West 1970), provides in pertinent part: Every person * * * who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money * * * is guilty of theft. Petitioners claim that Pierre knowingly and designedly fraudulently represented that he was a licensed contractor, which he was not, and that he would bring the building "up to code," which he did not do. Petitioners, however, have failed to prove that Pierre "knowingly and designedly" made the false statements. Norton v. Commissioner,333 F. 2d 1005 (9th Cir. 1964), affg. 40 T.C. 500 (1963). He apparently performed satisfactory work for petitioners' former landlord. See Hartley v. Commissioner,36 T.C.M. 1281, 46 P-H Memo. T.C. par. 77,317 (1977). Petitioner merely assumes from Pierre's failure to bring the building "up to code," from his disappearance and from the fact that he was not a licensed contractor that he had the required criminal intent. *63 To carry the day, petitioners must present persuasive evidence. Rule 142(a), Tax Court Rules of Practice and Procedure. This they have failed to do. Petitioner's main complaint is that Pierre did not do satisfactory work. That is not a crime. But even assuming Pierre did knowingly and designedly fraudulently misrepresent to petitioners that he was a licensed contractor and that he would bring the building "up to code," there is no evidence of the amount, if any, of the $11,000 with which Pierre absconded. To the extent the $11,000 was paid for labor performed and for materials, petitioners have not suffered a theft loss.See Miller v. Commissioner,19 T.C. 1046, 1048 (1953).To be entitled to the deduction, petitioners must not only prove that they suffered a theft loss, but also the amount thereof. J. J. Dix, Inc. v. Commissioner,223 F. 2d 436 (2nd Cir. 1955), cert. denied 350 U.S. 894 (1955). This they have failed to do. Decision will be entered for respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect during the year in issue.↩
2. Section 1002 was repealed by P.L. 94-455, effective for taxable years beginning after December 31, 1976. The provision on the recognition of gain or loss on the sale or exchange of property is now contained in section 1001(c).↩
3. No question was raised that the two properties were not like kind until respondent, in his brief, suggested that part of both properties were petitioners' residences. Respondent has raised this issue too late for us to consider it.↩