348 F.2d 122
 65-2 USTC P 9518
 Patsy F. DiZENZO, Transferee, Petitioner,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
Patsy F. DiZENZO and Anna DiZenzo, Petitioners,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
PATSY FRANK, INC., Petitioner,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
 No. 392, Docket 29360.
 United States Court of Appeals Second Circuit.
 Argued May 25, 1965.
Decided June 28, 1965.
 
 Harold Lavien, Boston, Mass., on the brief for petitioners.
 Meyer Rothwacks, Washington, D.C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Gilbert E. Andrews, and Mark S. Rothman, Department of Justice, Washington, D.C., on the brief), for respondent.
 Before LUMBARD, Chief Judge, and SMITH and KAUFMAN, Circuit Judges.
 LUMBARD, Chief Judge.
 
 
 1
 Patsy DiZenzo and his wife appeal from that portion of a Tax Court decision which held them liable for additional taxes on their joint returns for 1946 through 1948.[1] The issues on this appeal stem from the Tax Court's finding that Patsy DiZenzo diverted to his own use, but did not report on the appellants' tax returns, a part of the income of Patsy Frank, Inc. ('Patsy Frank'), a corporation controlled by him and engaged in general masonry and carpentry work in Bridgeport, Connecticut. Patsy DiZenzo owned 98 per cent of its stock; the balance was owned by his wife and son.
 
 
 2
 The appellants do not dispute that substantial amounts were diverted from Patsy Frank. However, they dispute that the net amounts diverted were as large as found by the Tax Court, and they contend that the court erred in holding that the entire amount should be treated as ordinary income to them without regard to whether Patsy Frank then had earnings and profits equal to the diversions.
 
 
 3
 We affirm the Tax Court's findings as to the net amounts diverted from Patsy Frank. With respect to whether these should be treated as ordinary income, however, we remand for a finding as to whether the appellants have established that these amounts were greater than the earnings and profits of Patsy Frank at that time.
 
 
 4
 As the appellants concede, adequate business records were not kept for Patsy Frank. An accountant, employed parttime at $75 per year, made entries in a cash disbursement book from check stubs, but no regular record was kept of payments made in cash or of the corporation's receipts. The corporation's tax returns were prepared by the accountant from the cash disbursements book and from information obtained from Patsy DiZenzo.
 
 
 5
 Income tax deficiencies were assessed against Patsy Frank from 1946 through 1950 and against the appellants for 1946 through 1951. The parties stipulated the gross receipts or Patsy Frank, which were over half again as much as had been reported. These unreported receipts were in part set off by the Commissioner's allowance of operating expenses greater than claimed in the corporation's returns, and additional unreported operating expenses were allowed by the Tax Court-- $14,000 for 1946, $42,000 for 1947, and $38,000 for 1948.
 
 
 6
 The deficiencies assessed against the appellants as individual taxpayers resulted principally from the Commissioner's determination that substantial sums had been diverted by Patsy DiZenzo from Patsy Frank and Putnam Realty Company-- another corporation controlled by him. (No diversion of corporate income had been reported on the appellants' returns.) The Tax Court accepted the Commissioner's determination as to the gross amounts diverted. However, it found that appellants had made payments on behalf of Patsy Frank in addition to those assumed by the Commissioner, and it reduced accordingly the net amounts diverted from Patsy Frank.
 
 
 7
 Of relevance to this appeal are the reductions related to the court's allowance of additional operating expenses to Patsy Frank. The court concluded that a portion of these additional expenses had been paid for Patsy Frank by the appellants. Faced with an almost total lack of direct evidence as to what that portion was, it estimated that the appellants had paid $1,000, $4,000, and $3,000 respectively for 1946 through 1948.
 
 
 8
 After making the several adjustments, the Tax Court found that the net amounts diverted from Patsy Frank during 1946, 1947 and 1948 were $10,699.16, $59,190.84 and $46,174.50.[2] These amounts, the court held, should have been reported by the appellants as ordinary income.
 
 
 9
 The appellants first argue that the net diversions should have been reduced by the full amounts of the additional operating expenses which the Tax Court allowed to Patsy Frank for those years. They reason as follows: Substantially all of Patsy Frank's receipts had been accounted for prior to allowance of the additional operating expenses, and the net assets of the corporation remained approximately unchanged during the years in question. Therefore, the additional operating expenses either must have been paid out of the receipts which were assumed to have been diverted to the appellants or they must have been paid for Patsy Frank by the appellants-- in either case the net amounts diverted should have been reduced by the full amounts of the additional expenses. We do not agree.
 
 
 10
 The flaw in this reasoning is in the assumption that Patsy Frank's net assets remained unchanged. The appellants cite as support for this assumption the balance sheet prepared for Patsy Frank's 1949 tax return, which shows its net assets as having varied less than a thousand dollars from 1946 to 1948. But the fact that the balance sheet was drawn up to accord with the corporation's tax returns for those years destroys whatever probative value it might otherwise have had. Patsy Frank's additional expenses may have been paid out of accumulated cash reserves, or the corporation may have borrowed for this purpose. It is not our task to weigh the probability that one of these, rather than the appellants or the corporation's current receipts, was the source of the necessary funds. Because neither Patsy DiZenzo nor his corporate alter ego kept adequate business records, the Tax Court was required to rely in part on estimates in determining the appellants' tax liability. We cannot say that its estimates were clearly erroneous. See Finley v. Commissioner of Internal Revenue, 255 F.2d 128, 133 (10 Cir. 1958); cf. Cohan v. Commissioner of Internal Revenue, 39 F.2d 540, 544 (2 Cir. 1930).
 
 
 11
 The appellants' second argument, also directed at the net amounts diverted from Patsy Frank, is that at least $10,000 of these amounts constituted non-taxable repayment of a loan. In 1942 or before, Patsy Frank constructed apartments for Putnam Realty, subcontracting a part of the work to Anthony Battistelli. When Putnam was unable to pay the full amount due on the contract, Patsy Frank was in turn unable fully to pay Battistelli. The appellants then undertook to pay Battistelli and did pay him at least $10,000.
 
 
 12
 It was the appellants' position in the Tax Court that the amounts diverted from Putnam, for which they were taxed, constituted repayment by that company of an obligation to the appellants arising out of their payment to Battistelli, thus making the rentals diverted nontaxable to the extent of the purported repayment. The Tax Court rejected this argument, principally on the ground that the debt to Battistelli had been owed by Patsy Frank, not by Putnam. The appellants do not challenge the Tax Court's conclusion but now argue that it was Patsy Frank which became indebted to them and that it was a portion of the amounts diverted from Patsy Frank which constituted repayment of a debt.
 
 
 13
 There is no evidence that the parties regarded the above events as creating an obligation from Patsy Frank to the appellants or, in any event, that the diversions from Patsy Frank were regarded as satisfying any such obligation. Patsy Dizenzo himself testified that he regarded the debt as owed by Putnam and as being satisfied by the diversions from that company. Having failed in their argument based on that testimony, the appellants cannot now maintain a position premised on facts inconsistent with that testimony and not otherwise supported by the record.
 
 
 14
 The appellants' argument that the Tax Court erred in treating the entire amounts diverted from Patsy Frank as ordinary income presents, at least on the present record, a more difficult question. Section 115(d) of the Internal Revenue Code of 1939 provides, so far as relevant here, that
 
 
 15
 'any distribution made by a corporation to its shareholders * * * (which) is not a dividend * * * shall be applied against and reduce the adjusted basis of the stock provided in section 113, and if in excess of such basis, such excess shall be taxable in the same manner as a gain from the sale or exchange of property.'
 
 And 115(a) defines a corporate dividend as
 
 16
 'any distribution made by a corporation to its shareholders * * * (1) out of its earnings or profits accumulated after February 28, 1913, or (2) out of the earnings or profits of the taxable year * * * without regard to the amount of the earnings and profits at the time the distribution was made.'
 
 
 17
 If 115 controls, the amount of taxes due on the amounts diverted from Patsy Frank depends on whether or not the diversions exceeded the corporation's earnings and profits and, if so, on the appellants' basis in their stock. The Tax Court, however, held that 115 does not control under the circumstances of this case. The controlling principle, according to the Tax Court, is 'that amounts of corporate funds diverted by the dominant stockholder of a corporation constitute income to him regardless of whether they might be treated as a constructive dividend, and that taxability to the stockholder need not turn upon the existence of corporate earnings and profits.' Or, restating the principle in terms of the 1939 Code, such amounts are to be treated under the general definition of gross income, 22(a), and not under the special provision for corporate distributions, 115.
 
 
 18
 We think that the Tax Court's interpretation is in error and that 115 does control. We are not here dealing with sums stolen or embezzled by a taxpayer. There has been no suggestion that the diversions in this case were improper as a matter of corporate law, and no reason appears why they cannot properly be described as 'distribution(s) made by a corporation to its shareholders.' We are of course aware that statutory history and purposes may give special meanings to the language of the tax code. But the givernment has not shown that the ordinary meaning of the language of 115 is inadequate in this instance.
 
 
 19
 The interpretation for which the government contends is of comparatively recent origin. As recently as 1960, the government itself was contending in a case similar to this that the amounts diverted constituted constructive dividends, Federbush v. Commissioner of Internal Revenue, 34 T.C. 740, 754 (1960), aff'd per curiam, 325 F.2d 1 (2 Cir. 1964).[3] The government's present interpretation of 115 seems first to have appeared in the reported cases in Davis v. United States, 226 F.2d 331, 334 (6 Cir. 1955), cert. denied, 350 U.S. 965, 76 S.Ct. 432, 100 L.Ed. 838 (1956), where it was accepted by the court. The Sixth Circuit later seemed to disavow Davis so far as civil cases are concerned, Drybrough v. Commissioner of Internal Revenue, 6 Cir. 238 F.2d 735, 737 (1956), but now has accepted the government's interpretation for both civil and criminal case, Weir v. Commissioner of Internal Revenue, 6 Cir., 283 F.2d 675, 684 (1960). This interpretation may also have been accepted by the Third Circuit in United States v. Goldberg, D.C., 330 F.2d 30, 38, cert. denied, 377 U.S. 953, 84 S.Ct. 1630, 12 L.Ed.2d 497 (1964), although the issue was not there squarely presented.
 
 
 20
 On the other hand, the government's view has been expressly rejected by the Eighth Circuit, Simon v. Commissioner of Internal Revenue, 8 Cir., 248 F.2d 869, 873 (1957), and decisions of the Fifth and Seventh Circuits tend in the same direction. Bernstein v. United States, 234 F.2d 475, 482 (5 Cir.), cert. denied, 352 U.S. 915, 77 S.Ct. 213, 1 L.Ed.2d 122 (1956);[4] Demmon v. United States, 321 F.2d 203 (7 Cir. 1963). This court has not previously passed on the question; although diversions similar to those in this case were involved in Federbush v. Commissioner of Internal Revenue, supra, the government there argued that they constituted constructive dividends, and the Commissioner treated them as ordinary income only to the extent that he found that the corporation had earnings and profits. 34 T.C. at 754.
 
 
 21
 The case against the government's interpretation was well stated by the Eighth Circuit in Simon v. Commissioner of Internal Revenue:
 
 
 22
 'The corporate distribution here was made with the knowledge of the stockholders and was acquiesced in by them. The corporation is liable for a substantial tax upon the diverted income it failed to report. Further tax will be collected from taxpayers under the constructive dividend theory. Fraudulent tax dealings should not be encouraged. Criminal penalties are provided for tax evasion, and fraud and delinquency penalties are assessed upon taxes due when the circumstances warrant. The Government should be allowed to collect all tax and penalties authorized by law, but it is not our function to expand tax liability to fields not covered by statute. We find nothing in the Tax Court's opinion to indicate that the diverted sums represented salary or any other recognized ordinary income. We believe that the only way that the diverted income already taxed to the corporation can be taxed to the individual taxayers is by the treatment of such diversions as dividends and corporate distributions.' 248 F.2d at 876-877.
 
 
 23
 The government has in this case pointed to the difficulty of reconstructing the earnings and profits of Patsy Frank in view of the corporation's hopelessly inadequate books and records. The answer to this problem is not to give a special meaning to the language of 115, however, but rather to place the burden on the individual taxpayers to establish that the corporation did not have earnings and profits equal to the amounts diverted. See Lash v. Commissioner of Internal Revenue,15 T.C.M. 453, 460 (1956), rev'd in part on other grounds, 245 F.2d 20 (1 Cir. 1957). We have no doubt that on the present record the Tax Court could properly have found that the appellants failed to establish that the accumulated[5] earnings and profits of Patsy Frank did not equal the amounts which they diverted. The Tax Court made no findings in this respect, however, and the record is not so clear as to permit us to hold as a matter of law that the appellants failed to sustain this burden. This issue therefore must be left for disposition on remand.
 
 
 24
 The judgment of the Tax Court is reversed in part, and the case is remanded for additional findings.
 
 
 
 [1]
 The Tax Court proceedings involved the liability of the appellants as individual taxpayers for 1946 through 1951, the liability of Patsy Frank, Inc., for 1946 through 1950, and the liability of the appellants for the taxes due from Patsy Frank, Inc. by reason of their having received assets of the corporation without consideration, see Internal Revenue Code of 1939, 311. In addition, penalties were assessed against the appellants and Patsy Frank, Inc., for fraud with intent to evade taxes, see 293(b). The appeals by Patsy DiZenzo, in his capacity as transferee, and by Patsy Frank, Inc., were withdrawn in open court
 
 
 [2]
 The net amounts found to have been diverted during 1949 and 1950-$7,607.23 and $3,943.22-- are not at issue on this appeal
 
 
 [3]
 The constructive dividend argument typically was a counter to the taxpayer's argument that the money had been embezzled and, under Commissioner of Internal Revenue v. Wilcox, 327 U.S. 404, 66 S.Ct. 546, 90 L.Ed. 752 (1946), therefore was not taxable at all. Wilcox has since been overruled by James v. United States, 366 U.S. 213, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1961)
 
 
 [4]
 The Fifth Circuit expressly declined to rely on Davis but instead found that the corporation's earnings and profits were greater than the amounts diverted
 
 
 [5]
 The current earnings and profits of Patsy Frank for 1946 through 1948, as found by the Tax Court, are not by themselves adequate to cover the full amounts diverted. The Tax Court found the corporation's taxable income to have been $12,727.45,.$17,298.42, and $16,540.56 for the three years. This compares with diversions of $10,699.16, $59,190.84, and $46,174.50